1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MADISAN ALBERS, | CASE NO. 3:22-cv-05489-RJB |
| Plaintiff, | |
| v. | ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| USAA CASUALTY INSURANCE COMPANY, | |
| Defendant. | |

This matter comes before the Court on the Defendant USAA Casualty Insurance Company's ("USAA") Motion for Partial Summary Judgment. Dkt. 16. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

This insurance dispute case arises from a car accident in which the Plaintiff was injured by an intoxicated uninsured motorist. Dkt. 1-3. USAA, her uninsured motorist ("UM") policy carrier, now moves for summary judgment on some of the Plaintiff's claims. Dkt. 16. For the reasons provided below, the motion (Dkt. 16) should be granted, in part, and denied, in part.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

I.   RELEVANT FACTS AND PROCEDURAL HISTORY

A.  FACTS

1.  The Car Accident and Insurance Policy

At the time of these events, the Plaintiff was a 21-year old student at Gonzaga University studying pre-medicine.  On June 7, 2021, she was stopped at a red light in University Place, Washington.  Dkt. 26 at 9.  The Plaintiff was hit by an intoxicated uninsured motorist and sustained personal injuries (including shoulder pain, neck pain, and headaches) and damage to her car.  *Id.* at 9 and 26.  The intoxicated driver was arrested.  *Id.* at 9.  The Plaintiff was covered by an insurance policy issued by USAA that provided her with uninsured motorist coverage up to $300,000 for accident-related injuries and $100,000 for property damage.  *Id.* at 71.  Property damage is not at issue in this case.

2.  Plaintiff's Post-Accident Medical Care

**Peninsula Family Medical**. On June 8, 2021, the Plaintiff saw Dr. Erin Dodge, her primary care provider, in part, due to the accident.  Dkt. 18 at 262.  The Plaintiff reported neck pain, but no numbness or tingling in the extremities, no dizziness, ringing in her ears, nausea or vomiting.  *Id.*  Dr. Dodge "[d]iscussed possible whiplash/concussion" and advised her to "rest her eyes, avoid unnecessary electronics, continue topical modalities for pain relief [and] gentle stretching."  *Id.* at 263.

**Atlas Family Chiropractic**. The Plaintiff received treatment from Darryl Roundy, DC, at Atlas Family Chiropractic starting the night of the accident, June 7, 2021 through August 11, 2021, and a few times while she was home on winter break from college for injuries related to the accident.  Dkts. 18 at 285, 426-49; 17 at 28-29. The Plaintiff was initially diagnosed with sprains to her neck, thorax, and "other parts of lumbar spine and pelvis."  Dkt. 18, at 341. By

August 11, 2021, the Plaintiff reported that "she was feeling much better," had some "upper neck tightness and difficulty sleeping." Dkt. 18 at 358. Her diagnosis was "subluxation of unspecified" cervical, thoracic and lumbar vertebra. *Id.* Dr. Roundy testified that as of January 4, 2022, that the Plaintiff had returned to her pre-accident status related to the injuries that he was treating her for and that any further treatment was "preventive." Dkt. 17 at 29-30. Although he noted that she had "a mild complaint of cognitive issues" her ranges of motion "normalized quite nicely." *Id.* at 30. Dr. Roundy found her "percentage of disability" to be zero. *Id.* at 33.

**Olympic Sports & Spine.** The Plaintiff started physical therapy on June 16, 2021 at Olympic Sport & Spine for symptoms of pain and concussion related to the accident. Dkt. 18 at 405. Her treatment continued approximately bi-weekly until August 16, 2021 when the Plaintiff returned to college in Spokane, Washington. *Id.* at 405-406. By August 16, 2021, the Plaintiff's range of motion was within normal limits and she was pain-free. Dkt. 18 at 576. Her balance issues had resolved. *Id.* The Plaintiff reported "continued mild headaches occasionally, notably with high stress/high stimulus situations and occasional bouts of short-term memory disturbance that will likely continue to improve over time." *Id.* She was expected to "likely continue to improve" with a "complete resolution of symptoms," but if symptoms persisted, they discussed a follow-up plan. *Id.*

**MultiCare Orthopedics and Sports Medicine.** On June 23, 2021, Dr. Paul Lentz of MultiCare Orthopedics & Sports Medicine began treating the Plaintiff for "concussion without loss of consciousness." Dkt. 18 at 136-142. His initial assessment was that the Plaintiff had "[s]igns and symptoms consistent with post-motor vehicle accident concussion and whiplash. Impairments noted contribute to functional limitations in reading, conversing, studying, focusing, social/recreational activity participation." Dkt. 18 at 138. Dr. Lentz noted that the Plaintiff

presented with complaints of neck pain and "concussion symptoms (light/movement sensitivity, mood, headaches, word finding etc.) . . ." *Id.* She had a total of 20 out of 22 concussion symptoms and a "symptom severity score" of 45 out of 132. Dkt. 17 at 41. He recommended that she receive physical therapy, avoid driving at that time, wear sunglasses and ear plugs for light and noise sensitivity, and indicated that he was willing to provide notes to her employers (she was shadowing a chiropractor for the summer and working at a mortgage company). Dkt. 18 at 143. Dr. Lentz also recommended that she "hold off" on a college physics class she planned to take over the summer. *Id.* He continued to treat her on five more occasions through December 20, 2021. Dkts. 18 at 136-255; 17 at 41.

By August 24, 2021, the day before she was scheduled to return to college, the Plaintiff reported to Dr. Lentz that she has experienced improved symptoms and has had a decrease in neck pain and headaches, "but when she gets them they are pretty bad." Dkt. 18 at 203. Dr. Lentz approved of the academic accommodations that were put in place for her upcoming semester. *Id.* at 205. He encouraged her to continue with concussion management as needed and indicated that it was fine to increase activity as tolerated. *Id.*

On November 24, 2021, the Plaintiff returned for an exam by Dr. Lentz while on Thanksgiving break. Dkt. 18 at 238-249. She quit the rowing team for Gonzaga and reported to continue to have cognitive symptoms. *Id.* at 238. The Plaintiff reported that the symptoms got "worse with classes/studying" and that she was "having difficulty" remembering questions to ask when she talked with professors, would forget to turn the oven off, and forget where she placed things. *Id.* 238-239. Chiropractor care in Spokane for neck pain and headaches were reported as helpful. *Id.* In a check box form, the Plaintiff informed Dr. Lentz that she had 3/22 concussion symptoms and that her total symptom severity score was 4/132. *Id.* at 240. Dr. Lentz advised

her to continue with concussion management and with the academic accommodations that were in place. *Id.* at 241. They discussed a possible "neropsych [sic] referral if [she had] continued cognitive problems." *Id.* Dr. Lentz assessed the Plaintiff with post-concussion syndrome. *Id.* at 241.

Dr. Lentz last treated the Plaintiff on December 20, 2021. Dkt. 18 at 250-255. At that point, she had 3/22 concussion symptoms and her total symptom severity was 4/132. Dkt. 17 at 43. He advised her at this appointment that if her symptoms persisted, they could consider a referral for her to see a neurologist or neuropsychologist for further treatment. Dkt. 17 at 46-47. The Plaintiff did not see Dr. Lentz again and he did not give her a referral for other care. *Id.*

**Salina Family Chiropractic**. After returning to Gonzaga in the fall, the Plaintiff sought care from Salina Family Chiropractic from September 16, 2021 though November 9, 2021. Dkt. 18 at 484-486. The record does not contain any treatment notes from this provider, just the bill for six visits for treatment for "subluxation of unspecified" cervical, thoracic and lumbar vertebrae. *Id.*

3. Submission of Claim and USAA's Claims Handling

On November 24, 2021, the Plaintiff contacted USAA and requested that it open a UM claim. Dkt. 26 at 73. The Plaintiff included the police report and pictures of the accident. *Id.* Her medical records were sent on December 20, 2021. Dkt. 18, at 98.

On January 13, 2022, USAA offered to settle Plaintiff's claims for $10,653.00. Dkt. 26 at 76. The Plaintiff rejected this offer. Dkt. 26 at 79.

On January 25, 2022, the Plaintiff again wrote USAA, made a policy limits demand of $300,000 and included medical records and bills (totaling $8,393.14). Dkt. 26 at 81-85. The Plaintiff's letter included a discussion of lifestyle limitations she asserted were a result of her

1   injuries. *Id.* Thereafter, USAA adjuster Kelly Krueger was assigned to handle Plaintiff's claim.

2   Dkt. 26 at 87.  Adjuster Krueger reserved up to $40,000 for the Plaintiff's claim and valued the

3   non-economic damages of the claim at between $30,080 and $40,080.  Dkt. 26 at 94-95; 131-

4   132.  She noted that offset should be for $8,347 for the medical bills.  Dkt. 26 at 95.  Adjuster

5   Krueger states USAA adjusters determine valuation of claims and that valuation of non-

6   economic portions of people's claims (like for pain and suffering or loss of enjoyment of life) is

7   subjective.  Dkt. 26 at 111-115.

8       On February 10, 2022, USAA offered to settle the Plaintiff's claim for $25,000.  Dkt. 26

9   at 89.  Adjuster Krueger states that the offer was based on the information in the medical records,

10  medical treatment notes, and other information that was provided in the January 25, 2022

11  demand letter.  Dkt. 26 at 118.  Adjuster Krueger did not contact the Plaintiff's medical

12  providers because she did not think that the records were incomplete; she only relied on the

13  records sent by the Plaintiff's lawyers.  Dkt. 26 at 118-119 and 134.  The Plaintiff refused the

14  offer on February 23, 2022.  Dkt. 26 at 91-92.

15      On March 24, 2022, USAA offered the Plaintiff $30,000 to resolve her claim.  Dkt. 26 at

16  135.  The Plaintiff rejected the offer.  Dkt. 26 at 138 and 148.  Adjuster Kreuger states that she

17  may have offered more if there was additional information to support a larger offer, but there

18  was no new information.  Dkt. 26 at 139.

19  **B. PROCEDURAL HISTORY AND PENDING MOTION**

20      On June 1, 2022, the Plaintiff filed this lawsuit.  Dkt. 1.  In her Amended Complaint, she

21  makes claims for breach of contract, bad faith, negligence, violation of Washington's Insurance

22  Fair Conduct Act, RCW 48.30.015 ("IFCA"), violation of Washington's Consumer Protection

23  Act, RCW 19.86, *et. seq.* ("CPA"), and for "unfair claims settlement practices," Washington

24

Administrative Code ("WAC") 284-30-330.  Dkt. 1-3 at 6-8.  The Plaintiff claims damages, attorneys' fees and costs.  *Id.* at 8.

USAA now moves to dismiss all Plaintiff's claims except her breach of contract claim.  Dkt. 16.  USAA contends that the Plaintiff's claims for bad faith, negligence, violation of IFCA, violation of CPA, and violation of WAC 284-30-330 (collectively "extra-contract claims") should be dismissed because the claims handling was reasonable here.  Dkt. 16.  Additionally, it maintains that her bad faith, negligence and violation of IFCA and violation of CPA claims should be dismissed because she has suffered no harm from the claims handling.  *Id.*  USAA argues that her IFCA claim should also be dismissed because there is no denial of coverage and/or payment of benefits.  *Id.*  Lastly, it contends that her violation of WAC 284-30-330 should also be dismissed because there is no cause of action under that provision of the WAC.  *Id.*  The Plaintiff opposes the motion (Dkt. 25) and USAA has filed a reply (Dkt. 30).  The motion is ripe for review.

## II.   DISCUSSION

### A.  WASHINGTON SUBSTANTIVE LAW AND FEDERAL PROCEDURAL LAW APPLIES

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction, as is the case here, apply state substantive law and federal procedural law.  *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it.  *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.2001) (*cleaned up*).

1

## B.  SUMMARY JUDGMENT STANDARD

2          Summary judgment is proper only if the pleadings, the discovery and disclosure materials

3   on file, and any affidavits show that there is no genuine issue as to any material fact and that the

4   movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party is

5   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

6   showing on an essential element of a claim in the case on which the nonmoving party has the

7   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

8   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

9   for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

10  (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

11  metaphysical doubt.").  Conversely, a genuine dispute over a material fact exists if there is

12  sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

13  the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986);

14  *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

15         The determination of the existence of a material fact is often a close question.  The court

16  must consider the substantive evidentiary burden that the nonmoving party must meet at trial,

17  which is a preponderance of the evidence in most civil cases.  *Anderson,* 477 U.S. at 254; *T.W.*

18  *Elect.,* 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the

19  nonmoving party only when the facts specifically attested by that party contradict facts

20  specifically attested by the moving party.  The nonmoving party may not merely state that it will

21  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

22  to support the claim.  *T.W. Elect.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at

23

24

255).  Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts"

will not be "presumed." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888–89 (1990).

### C. MOTION FOR SUMMARY JUDGMENT ON BAD FAITH, NEGLIGENCE, IFCA AND CPA CLAIMS BASED ON WHETHER CLAIMS HANDLING WAS REASONABLE

The Plaintiff contends USAA's claims handling was not reasonable – its failure to

reasonably investigate and its denial of benefits constituted a breach of the duty of good faith it

owed her.  Dkt. 25.  The Plaintiff asserts that her claims for bad faith, negligence, violation of

IFCA and violation of CPA are based on a violation of the duty of good faith that USAA had to

her.  *Id.*

In Washington, "[a]n insurer has a duty of good faith to its policyholder and violation of

that duty may give rise to a tort action for bad faith."  *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478,

484 (2003).  Claims by insureds against their insurers for bad faith and negligence for breach of

the duty of good faith are analyzed like any other tort: duty, breach of that duty, and damages

proximately caused by any breach of duty.  *Id.*, at 485.

Similarly, "IFCA explicitly creates a cause of action for first party insureds who were

unreasonably denied a claim for coverage or payment of benefits."  *Perez-Crisantos v. State

Farm Fire and Casualty Co.*, 187 Wash.2d 669, 680 (2017)(*cleaned up*).

Violations of the CPA also require a Plaintiff to establish "five distinct elements: (1)

unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact;

(4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training

Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986). "A per se unfair trade

practice exists when a statute which has been declared by the Legislature to constitute an unfair

or deceptive act in trade or commerce has been violated." *Id.*, at 786.  As to the first CPA factor,

the Washington State Supreme Court recently noted that "[i]t is well established that insureds may bring private CPA actions against their insurers for breach of the duty of good faith or for violations of Washington insurance regulations." *Peoples v. United Servs. Auto. Ass'n*, 2019 WL 6336407, at *3 (Wash. Nov. 27, 2019).

UIM insurers, like USAA, owe a duty to "deal in good faith and fairly as to the terms of the policy and not overreach the insured, despite its adversary interest." *Ellwein v. Hartford Acc. & Indem. Co*., 142 Wn.2d 766, 781 (2001)(*as amended*)(*overruled on other grounds by Smith v. Safeco Ins. Co*., 150 Wn.2d 478 (2003)).  In order to establish bad faith, an insured must show the breach of that duty was "unreasonable, frivolous, or unfounded." *St. Paul Fire & Marine Ins. Co. v. Onvia*, Inc., 165 Wn.2d 122, 132 (2008). Ordinarily, "[w]hether an insurer acted in bad faith remains a question of fact." *Smith* at 485.  "Questions of fact may be determined on summary judgment as a matter of law where reasonable minds could reach but one conclusion." *Id*.

The Plaintiff has pointed to sufficient issues of fact from which to conclude that USAA acted unreasonably in its handling of her claim.  Reasonable minds could reach various conclusions about the value of the claim based on the evidence in the record.  Moreover, USAA's claim adjuster acknowledged that she did not do any further investigation even though the Plaintiff still reported some concussion symptoms after December 2021.  Summary judgment should not be granted on whether the USAA's claims handling was reasonable.

## D.  SUMMARY JUDGMENT ON PLAINTIFF'S BAD FATIH, NEGLIGENCE, IFCA, AND CPA CLAIMS BASED ON LACK OF HARM FROM CLAIMS HANDLING

USAA moves for dismissal of the Plaintiff's bad faith, negligence, IFCA, and CPA claims arguing that the Plaintiff was not harmed by its claims handling.  Dkt. 16.  In response, the Plaintiff argues that she was harmed by USAA's alleged bad faith because she was forced to

1   pursue litigation and incurred additional expenses like paying for a medical expert to investigate

2   the bad faith.  While USAA argues that the Plaintiff has failed to point to actual bills from her

3   expert or point to any testimony in the record that she was damaged, she is entitled to reasonable

4   inferences on summary judgment.  It is reasonable to infer that her expert did not do his

5   investigation and report for free and so she incurred costs in hiring him.

6       The Plaintiff's bad faith, negligence, IFCA and CPA claims should not be dismissed for

7   lack of harm.  In Washington, financial expenses as a result of an insured's investigation into

8   their insurance company's alleged bad faith, including the cost of hiring experts, is recoverable

9   as damages in claims for bad faith, negligence and violations of the CPA.  *Coventry Associates v.*

10  *Am. States Ins. Co*., 136 Wn.2d 269, 285 (1998); *Kosovan v. Omni Ins. Co*., 19 Wn. App. 2d 668,

11  700 (2021)( holding "[e]xpenses incurred in investigating an unfair or deceptive act can establish

12  an injury under the CPA"), *Beasley* at 12 (holding tort claims for the breach of the duty of good

13  faith, "allow for recovery of expenses; consequential damages; and general tort damages").

14  Likewise, IFCA is "intended to protect insureds and provide additional remedies;" *Beasley* at 12,

15  accordingly, its provision for "'actual damages" includes expert witness fees for investigating the

16  insurance company's alleged bad faith, *Wall v. Country Mut. Ins*. Co., 319 F. Supp. 3d 1227,

17  1235 (W.D. Wash. 2018).  USAA's motion to dismiss Plaintiff's extra contractual claims based

18  on a lack of alleged harm should be denied.

19  **E.  IFCA CLAIM**

20      Under IFCA, "[a]ny first party claimant to a policy of insurance who is unreasonably

21  denied a claim for coverage or benefits by an insurer may bring an action . . . to recover the

22  actual damage," treble damages, costs and attorneys' fees. RCW 48.30.015 (1)-(2). "IFCA

23

24

1   explicitly creates a cause of action for first party insureds who were unreasonably denied a claim

2   for coverage or payment of benefits." *Perez-Crisantos* at 680 (*cleaned up*).

3       USAA argues that summary judgment should also be granted on the Plaintiff's IFCA

4   claim because it did not "unreasonably" deny her claim. As stated above, there are issues of fact

5   as to whether USAA's offers were reasonable. Accordingly, the motion for summary judgment

6   on this claim should be denied.

7   **F.  VIOLATION OF WAC 284-30-330 CLAIM**

8       The Plaintiff's Amended Complaint asserts a claim for violation of WAC 284-30-330.

9   Dkt. 1-3. To the extent that the Plaintiff intends for this to be a stand-alone claim, and not the

10  basis of her IFCA or CPA claims, USAA moves for summary judgment dismissal of the claim.

11  Dkt. 16. There is no private cause of action for violations of WAC 284-30-330 in the regulation.

12  *See Perez-Crisantos* at 678-79. Both IFCA and the CPA provide causes of action for certain

13  provisions of the regulation. *Id.* The Plaintiff does not directly address USAA's argument that

14  there is no stand-alone claim but discusses violations of WAC 284-30-330 as the basis for her

15  IFCA and CPA claims. To the extent that the Plaintiff asserts a stand-alone claim for violation

16  of WAC 284-30-330, USAA's motion for summary judgment (Dkt. 16) should be granted and

17  the claim dismissed.

18      **III.   ORDER**

19      Therefore, it is hereby **ORDERED** that:

20      • USAA's Motion for Partial Summary Judgment (Dkt. 16) **IS GRANTED** to the

21         extent that the Plaintiff asserts a stand-alone claim for violation of WAC 284-

22         30-330 and **IS DENIED** in all other respects;

23

24

o   To the extent that the Plaintiff asserts a stand-alone claim for violation of WAC 284-30-330, that claim **IS DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 11th day of May, 2023.

ROBERT J. BRYAN
United States District Judge